**CITY OF BISMARCK, Plaintiff and Respondent,**

v.

**C. D. ANDERSON, Defendant and Appellant.**

**Cr. 268.**

Supreme Court of North Dakota.

July 26, 1955.

Frederick E. Saefke, Jr., Asst. City Atty., Bismarck, for plaintiff and respondent.

Daniel J. Chapman, Bismarck, for defendant and appellant, W. J. Austin, Bismarck, of counsel.

MORRIS, Judge.

The defendant was convicted in the court of the police magistrate of the City of Bismarck of committing the offense of disorderly conduct by wilfully and unlawfully making "a disturbance and noise contrary to the City Ordinances of the said City." Upon demand of defendant trial was had before a jury which returned a verdict of guilty. The defendant appealed to the District Court of Burleigh County where he was again found guilty by a jury. He now appeals to this court from that conviction and from an order of the district court denying him a new trial. The defendant specifies certain alleged errors at law occurring at the trial and the insufficiency of the evidence to justify the verdict.

On Sunday, February 14, 1954, the defendant was the proprietor of a neighborhood grocery. One Standley was indebted to him for a grocery bill of about one hundred dollars. The defendant had loaned Standley ten dollars and as security for this loan had pledged and delivered to the defendant a suitcase and its contents. Standley was also the owner of an automobile for which he had been unable to buy a license due to his stringent financial circumstances. Standley turned possession of his automobile over to the defendant and parked it on

the defendant's property near the grocery store. Anderson testifies that it was mutually agreed that the automobile was pledged as security for the grocery bill and that Standley was favored by having it stored in a place where it would not be picked up by the police for not having a current license. Standley appeared at the defendant's grocery store and stated that he was going to take his car and overhaul it. The defendant refused to yield possession. Standley placed the pledged suitcase in the car. A dispute ensued. Both Standley and the defendant called police headquarters. Police Officers Bossert and Reile were called by radio and directed to proceed to the scene of the dispute. The officers arrived at about 12:30 p. m. Bossert testifies that when the police arrived Anderson and Standley were in a hot argument. Their voices were not too loud but were above normal. He also stated they were cussing. But it appears that the swearing was all being done by Standley. Each of the disputants appealed to the police and were told that the right to possession of the car was a private matter requiring private legal advice. The dispute continued. They were told to quit arguing, but the argument still continued. Standley went into the grocery store to call a wrecker to remove the car and Anderson let the air out of two tires on the automobile after being told to desist by the officers. The argument again flared up. Bossert called police headquarters for instructions, pursuant to which he arrested both men and brought them to the police station. Standley pled guilty to using foul and indecent language in a public place.

Officer Reile was present during the entire altercation and his testimony generally corroborates that of Officer Bossert. The altercation did not attract the attention of any persons in the neighborhood. A lady who was living in an apartment in the basement of the store building within twenty-five feet of the place where most of the argument occurred did not hear any loud, rude, obscene, or objectionable talk. Neither of the officers talked to anyone who was disturbed by what happened. The only language of an unseemly nature used by Anderson was, according to the testimony of Officer Reile, uttered under these circumstances: After Anderson had let the air out of the tires, Reile says: " I went back to sit in the Squad Car, and in the meantime Mr. Stanley come out to the Squad Car and Mr. Anderson come back there and Stanley kept insisting that he wasn't going to leave the car there. * * * Mr. Stanley come back out and come up to the window on Officer Bossert's side and he insisted he was going to move that car. * * * He said he was going to take it, and Mr. Anderson stated then, 'That is the kind of a cheap son-of-a-bitch that can get away with it.' " Bossert also says Anderson made that statement. Officer Reile's testimony further discloses the following:

"Q. You were present during the entire event of this, weren't you?
"A. Yes.

"Q. Were you disturbed by the tone of voice or the conversation, or anything else that happened at that time?

"A. Yes, sir.

"Q. What caused you to be disturbed, Officer Reile?

"A. I don't like people arguing in my presence. It bothers me."

The foregoing constitutes the only testimony in the record that any person was disturbed by what occurred. The complaint was signed by Reile.

The defendant denies using the language attributed to him by the officers. Standley was not a witness but it was stipulated that if present he would testify that he did not hear the defendant use the objectionable language or any similar language. Under the circumstances it may be presumed that the remark was made to the police officers and that they were the only ones who heard it. Neither of them testifies as to the tone or volume of Anderson's voice when the remark was made. It created no disturbance.

The ordinance which the defendant is charged with having violated provides:

"Disorderly Conduct: What shall constitute: Any person guilty of any of the following acts within the limits of the City of Bismarck shall be guilty of disorderly conduct: * * *."

Then follow sections having no bearing upon this case. It is then provided:

" (2) Disturbing Peace. Any person who shall make and countenance, or assist in making, noise, disturbance or improper diversion, and all persons who shall collect in bodies or crowds in the city, for unlawful purposes, or to the annoyance or disturbance of citizens or travelers."

It is specifically charged in the complaint that the defendant did "make a disturbance and noise."

The particular paragraph of the ordinance which the defendant is charged to have violated is headed "Disturbing Peace." In Town of Ponchatoula v. Bates, 173 La. 824, 138 So. 851, 852, it is said:

"A disturbance of the peace may be created by any act or conduct of a person which molests the inhabitants in the enjoyment of that peace and quiet to which they are entitled, or which throws into confusion things settled, or which causes excitement, unrest, disquietude, or fear among persons of ordinary, normal temperament. Such acts to come within the purview of the ordinance must be voluntary, unnecessary, and outside or beyond the ordinary course of human conduct."

In Platt v. Greenwood, 50 Ariz. 158, 69 P.2d 1032, 1034, it is said of disturbing the peace that

"This offense occurs where a person maliciously and willfully disturbs the peace or quiet of any neighborhood, family, or persons by loud or unusual noise, or by tumultuous or offensive conduct, or by threatening, traducing, quarreling, challenging to fight or fighting, or who applies any violent, abusive, or obscene epithets to another."

The term noise as used in the ordinance means something more than audible sound. Some noises are agreeable and others are disturbing. A noise to be a violation of the ordinance must be of such nature as to disturb the community or persons in the vicinity. State v. Cantieny, 34 Minn. 1, 24 N.W. 458; City of St. Charles v. Meyer, 58 Mo. 86; Flores v. City and County of Denver, 122 Colo. 71, 220 P.2d 373; McQuillin, Municipal Corporations, 3rd Edition, Section 24.102.

The evidence does not warrant the jury in finding the defendant guilty of making a disturbance and noise within the meaning of the ordinance. It is therefore insufficient to support the verdict. The judgment appealed from is reversed and the trial court is directed to dismiss the action.

BURKE, C. J., and SATHRE, JOHNSON and GRIMSON, JJ., concur.