Dear Mayor Jordan:
You have asked this office whether the mayor's court has jurisdiction to try the traffic violation of operating a vehicle with a suspended license, a violation of R.S. 32:415.[1]
Enforcement authority of a mayor's court concerning a violation of a municipal ordinance is set forth in R.S. 33:441, which provides as follows:
 A. Except as provided in Chapter 7 of Title 13, there shall be a mayor's court in the municipality, with jurisdiction over all violations of municipal ordinances. The mayor may try all breaches of the ordinances and impose fines or imprisonment, or both, provided for the infraction thereof. Notwithstanding any other provision of the law to the contrary, the mayor may also impose court costs not to exceed thirty dollars for each offense, as defined by ordinance, on any defendant convicted of a violation of a municipal ordinances. The mayor may try all breaches of the ordinances and impose fines or imprisonment, or both, provided for the infraction thereof. Notwithstanding any other provision of law to the contrary, the mayor may also impose court costs not to exceed thirty dollars for each offense, as defined by ordinance, on any defendant convicted of a violation of a municipal ordinance. (Emphasis added).
Of further import is R.S. 33:362(A)(2)(b), which limits punishment for each such violation of a municipal ordinance "by fine not to exceed five hundred dollars or imprisonment not exceeding sixty days, or both." Mayor's courts are courts which have jurisdiction to conduct trials, determine guilt, and impose sentences including fines and imprisonment for breach of municipal ordinances. Statevs. Foy, 401 So.2d 948 (La. 1981).
Note that R.S. 32:41 allows a municipality to adopt ordinances "controlling traffic upon non-state maintained highways within their corporate limits under their general police power so long as such regulations do not modify, or conflict with, the provisions of this chapter or regulations of the department and the commission." See R.S. 32:41(A)(13). The penalty provided by state law for first and subsequent violations of driving under suspension is set forth in R.S. 32:57(A):
 A. The first violation of the provisions of this Chapter or any regulation of the department, secretary, and commissioner made pursuant thereto shall be punished by a fine of not more than one hundred seventy-five dollars or by imprisonment for not more than thirty days, or both, unless otherwise specifically provided. A subsequent violation shall be punished by a fine of not more than five hundred dollars or by imprisonment for not more than ninety days, or both. (Emphasis added).
LSA-R.S. 14:143 provides that "no governing authority of a political subdivision shall enact an ordinance defining as an offense conduct that is defined and punishable as a felony under state law." No such limitation occurs in the instant matter, as R.S. 32:57 defines driving under suspension as a misdemeanor offense.
Thus, the municipality (here, the Village of Florien) must provide an ordinance punishing driving under suspension which is in conformity with state law and is also within the parameters of the penalty limitations provided by R.S. 33:362(A)(2)(b). Reading R.S.32:57(A) in pari materia with R.S. 33:362(A)(2)(b), the municipal ordinance should reflect that a first violation of driving under suspension is punishable by a mayor's court with a fine of not more than $175.00 or by imprisonment by not more than 30 days, or both; a subsequent violation is punishable by a mayor's court as limited by the maximum allowed by R.S. 33:362(A)(2)(b), specifically, a fine of not more than $500.00 or by imprisonment by not more than sixty days, or both.
Note that an appeal from a conviction in mayor's court is tried de novo in the district court, per the language of R.S. 13:1896(A), providing:
 A. Mayor's courts and justice of the peace courts. (1) In criminal cases, the district courts have appellate jurisdiction over all appeals from orders of justices of the peace requiring a peace bond, and, except as otherwise provided by law, over all appeals from a mayor's court where a person has been subjected to imprisonment or a forfeiture of rights or property. Appeals from mayor's courts and justice of the peace courts, as provided for herein, shall be tried de novo. Any forfeiture or penalties collected by the district court on appeal from a conviction of a municipal ordinance shall be distributed and disbursed to the municipality. (Emphasis added).
We enclose for your general reference and file Attorney General Opinions 94-610, 96-116, 98-157, and 79-185 concerning the jurisdiction of the Mayor's court.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: ________________________________ KERRY L. KILPATRICK ASSISTANT ATTORNEY GENERAL
KLK:ams
[1] § 415. Operating vehicle while license is suspended; offenses in other states; record of offenses given other states.
A. It shall be unlawful for any person to operate a motor vehicle upon any public highway of this state during the period of suspension, revocation or cancellation of any license which may have been issued to him by this state or by any other state.
B. Any period of suspension or revocation shall automatically be extended for a period of one year from the date the licensee would otherwise have been entitled to apply for a new license upon his conviction for any offense involving the operation of a motor vehicle committed during such period. No driver shall use a license issued to him in another state or the privilege of a nonresident to drive a motor vehicle in this sate, upon receiving notice of his conviction, or of the entry of a plea of guilty and sentence thereupon, or of the forfeiture of bail in another state of federal jurisdiction for any offense, which if committed in this state, would be grounds for suspension or revocation of the license.
C. (1) A person with a Class "D" or Class "E" driver's license who violates the provisions of Subsection A of this Section may be fined up to five hundred dollars or imprisoned for not more than six months, or both and may be subject to a civil penalty of up to five hundred dollars or imprisoned for not more than six months, or both and may be subject to a civil penalty of up to one thousand two hundred fifty dollars.
 (2) A person with a Class "A", "B" or "C" driver's license who violates the provisions of Subsection A of this Section may be fined up to five thousand dollars or imprisoned for not more than six months or both and may be subject to a civil penalty of up to two thousand five hundred dollars.
D. (1) If the court finds that the defendant violated Subsection A at the time of conduct resulting in a conviction for a second or subsequent offense violation of R.S. 14:98, the offenders shall be fined not less than three hundred dollars nor more than five hundred dollars and imprisoned for not less than seven days nor more than six months. At least seven days of such imprisonment shall be without benefit of probation, parole, or suspension of sentence and shall be consecutive to any sentence imposed for the violation of R.S. 14:98. In addition the person may be subject to a civil penalty of up to one thousand two hundred fifty dollars.
 (2) If the person is operating a Group "A", "B", or "C" vehicle, and the court finds that the defendant violated Subsection A of this Section, at the time of conduct resulting in a conviction for a second or subsequent offense in violation of R.S. 14:98, the offender shall be fined not less than three hundred dollars nor more than five thousand dollars and imprisoned for not less than seven days nor more than six months. At least seven days of such imprisonment shall be without benefit of probation, parole, or suspension of sentence and shall be consecutive to any sentence imposed for the violation of R.S. 14:98. In addition, the person may be subject to a civil fine of up to two thousand five hundred dollars.
OPINION NUMBER 94-610
APRIL 4, 1995
The Town of Richwood may reactivate its Mayor's Court that was shut down for lack of funds in 1988.
R.S. 33:441
15 — Courts 71 — Municipalities
Mayor Edward L. Harris Town of Richwood 5130 Brown Road Richwood, LA 71202-7004
Dear Mayor Harris:
This office is in receipt of your request for an opinion of the Attorney General in regard to the establishment of a Mayor's Court for the Town of Richwood. You indicate in 1988 the town's police department and Mayor's Court were shut down because of lack of funds. The Town's police force has been reactivated and you ask if the Mayor's Court can also be reactivated.
Art. V, Sec. 20 to the Constitution of 1974 provides as follows:
 Mayors' courts and justice of the peace courts existing on the effective date of this constitution are continued, subject to change by law.
We find the Louisiana Supreme Court in State v. Foy,401 So.2d 948 (La. 1981) recognized that R.S. 33:441 provides for the establishment of Mayor's Courts in municipalities to have jurisdiction over all violations of municipal ordinances and jurisdiction to conduct trials, determine guilt and impose sentences including fines and imprisonment for breach of municipal ordinances.
Under this authority we would conclude the Mayor's Court in Richwood may be reactivated.
We hope this sufficiently answers your inquiry.
Sincerely yours,
 RICHARD P. IEYOUB Attorney General
 By: __________________________ BARBARA B. RUTLEDGE Assistant Attorney General
BBR
OPINION NUMBER 96-116
APRIL 9, 1996
15 — COURTS 16 — CRIMINAL LAW — CRIMES AND OFFENSES La. Const. art V § 19 La. Const. art. V § 9 La. C.Cr.P. art. 595 La. Ch. C. art. 116 La. Ch. C. art. 302 La. R.S. 13:1894.1 La. R.S. 14:98 La. R.S. 14:143, 1983 La. Acts, No. 531 § 1.
A mayor's court is prohibited by statute from exercising jurisdiction over prosecutions for driving while intoxicated or juvenile matters. In addition, a municipality cannot enact a misdemeanor ordinance that proscribes the same conduct as a state felony statute.
The Honorable John F. Johnson District Attorney Seventh Judicial District Court Post Office Drawer 6000 Harrisonburg, LA 71340
Dear Mr. Johnson:
Your request for an opinion concerning the jurisdiction of Mayors' Courts has been forwarded to me for research and reply. Specifically, you have asked the following questions:
 1. Does La. R.S. 13:1894.1 prohibit a mayor's court from adjudicating an offense under La. R.S. 14:98 or an equivalent local ordinance?
 2. Does a mayor's court have any jurisdiction over juvenile matters?
 3. May a municipality enact a misdemeanor ordinance that proscribes the same conduct as a state felony statute; and if so, does a prosecution by one governmental entity bar subsequent prosecution by the other governmental entity?
The first issue to be addressed is whether a mayor's court may properly exercise jurisdiction over prosecutions for driving while intoxicated. Regardless of whether the criminal offense is charged under state statute (La. R.S. 14:98) or local ordinance, the result remains the same: A mayor's court has no jurisdiction over DWI prosecutions. Under La. R.S. 13:1894.1(B), mayors' courts have been clearly divested of authority in such cases. This statute provides, in pertinent part:
 "However, mayors' courts shall have no jurisdiction whatsoever over violations as provided for by R.S. 14:98, nor to the trial of offenses against municipal ordinances relative to prosecutions on charges of driving while intoxicated."
Thus, by the explicit provisions of La. R.S. 13:1894.1, mayors' courts remain wholly without authority to entertain prosecutions for driving while intoxicated, regardless of whether they arise under state statute or local law.
Likewise, mayors' courts have no juvenile jurisdiction as well. Pursuant to Article V § 19 of the Louisiana Constitution, the Legislature enacted La. Ch. C. art. 302, defining the juvenile jurisdiction of Louisiana's courts. Therein, specific reference is made to special juvenile courts, district courts, parish courts, and city courts; however, the statute makes absolutely no reference to mayors' courts. In addition, the Children's Code itself expressly excludes mayors' courts from what it regards as a "court". The term "court" is defined by La. Ch. C. art. 116(4) to mean "any city, parish, district, or juvenile, or its judge, when exercising juvenile jurisdiction . . ."; but more importantly, for present purposes, article 116(4) also states that the term "does not include a judge of a mayor's court or a justice of the peace." Thus, when read in tandem, these various provisions clearly indicate that mayors' courts also cannot exercise juvenile jurisdiction.
Where a mayor's court is improperly exercising jurisdiction over DWI prosecutions or juvenile matters, the proper remedy for the aggrieved prosecutorial entity is to seek an injunction to permanently enjoin the mayor's court from exercising such improper jurisdiction. Additionally, Louisiana law recognizes that there is no double jeopardy problem where the initial court had no authority. Under La. C.Cr.P. art. 595, "a person shall not be considered as having been in jeopardy in a trial in which: (1) the court was illegally constituted or lacked jurisdiction." Thus, there exists no double jeopardy bar to prosecutions for DWI and juvenile prosecutions previously handled by the mayor's court.
The next issue to consider is whether a municipality may enact a misdemeanor ordinance that proscribes the same conduct as a state felony statute. From the outset, there exists no doubt that a municipality may not provide for the punishment of a felony. La. Const. Art. VI § 9. However, controversy has long surrounded the possible concurrent jurisdiction of state law and municipal ordinances — i.e. the grey area where local misdemeanor laws and state felony statutes prohibit the same conduct.
Formerly, Louisiana's courts had held that it was permissible for a municipality to enact misdemeanor ordinances that mirror state felony statutes. State v. Suire,319 So.2d 347 (La. 1975); see also State v. Foy, 401 So.2d 948
(La. 1981). Moreover, the courts also held that prosecutions by a municipality under their misdemeanor laws would bar any subsequent prosecution by the State because of double jeopardy.Id. The prosecutorial dilemma posed by such concurrent jurisdiction — the notorious "race to the courthouse" — evidenced a "need for legislative attention to the problem of concurrent state and local police regulation under the 1974 Constitution." Suire at 351 (Tate, J. concurring) (emphasis added). Therefore, in 1983, the Legislature heeded the Supreme Court's suggestion through passage of 1983 La. Acts, No. 531 § 1.
This act provides for preemption by state law. Now codified at La. R.S. 14:143, it provides in pertinent part:
 No governing authority of a political subdivision shall enact an ordinance defining as an offense conduct that is defined and punishable as a felony under state law.
Nevertheless, the scope and constitutional ramifications presented by La. R.S. 14:143 remained unaddressed by the courts until 1995. However, in City of Baton Rouge v. Ross,654 So.2d 1311 (La. 1995), the Supreme Court recognized La. R.S.14:143 as the definitive resolution of the jurisdiction problem in favor of the State. In Ross, a municipal ordinance prohibiting drug traffic loitering was held expressly preempted by legislative enactment. The Supreme Court held that the purpose of La. R.S. 14:143 is to prevent local governments from passing criminal ordinances defining as a misdemeanor the "same offense" (as that term is understood in the double jeopardy context) otherwise proscribed by state felony statute. Id, at 1318. The Court found that such preemption is a constitutional exercise of legislative authority, even as it is directed at those local governments that function under a home rule charter. Accordingly, municipal ordinances defining a misdemeanor offense will be preempted by similar state felony statutes.
The Ross decision also clearly defines the preemption process — "preemption of a local ordinance under this statute [is] accomplished through a facial challenge of the ordinance as written, and not from one or more case-by-case adjudications based upon particular facts."Id. at 1321. Consequently, "if the ordinance, according to its plain language, presents a substantial risk that it will place a defendant in `jeopardy' so as to bar a subsequent state felony prosecution, that ordinance must fall." Id. The Court in Ross also identified exactly what municipal ordinances fall within the scope of La. R.S. 14:143 — "the statute is meant to preempt any penal ordinance which is sufficiently similar to a state felony statute as to constitute the `same offense' for double jeopardy purposes." Id.
Thus, a municipality may no longer enact a misdemeanor ordinance that proscribes the same conduct as a state felony statute. Any conflicting municipal ordinance will be preempted by state statutes in accordance with La. R.S. 14:143. Accordingly, the Supreme Court's decision in Ross
supports the present difference with former opinions issued by this office regarding concurrent jurisdiction (e.g. Attorney General Opinion No. 94-399).
Therefore, it is the opinion of this office that a mayor's court is prohibited by statute from exercising jurisdiction over prosecutions for driving while intoxicated or juvenile matters. In addition, a municipality cannot enact a misdemeanor ordinance that proscribes the same conduct as a state felony statute.
If our office can be of further assistance, please do not hesitate to contact us. With kindest regards, I remain
Sincerely yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 By: _________________________ Mary E. Hunley Assistant Attorney General
OPINION NUMBER 98-157
MAY 4, 1998
46-A — Fees Cost 47 — Fines, Forfeitures and Penalties LSA-R.S. 13:1894.1
LSA-R.S. 13:1894.1(B)
LSA-R.S. 13:1894.1 provides that in the event of a violation of LSA-R.S. 14:98 is charged and such violation occurs within the territorial limits of a municipality not having a city court, all fines, forfeitures and penalties collected by the district court wherein said prosecution is actually brought, shall be distributed and disbursed by the district court to the governing authority of the municipality within whose boundaries the violations occurred. The district court should pay all fines, forfeitures and penalties under the provisions of LSA-R.S. 1894.1 directly to the governing authority of the municipality.
Carl F. Janzen, Mayor Town of Benton P.O. Box 336 Benton, LA 71006
Dear Mayor Janzen:
Your request for an Attorney General's Opinion has been forwarded to me for research and reply. From your letter and attachments, it appears that certain funds collected in payment of DWI fines had been forwarded by the Bossier Parish Sheriff's Department to a P.O. Box opened by the Chief of Police of the Town of Benton, and not mailed directly to the Town of Benton at its' own mailing address. According to the information I was presented, a check in the amount of $910.00 was received by the Chief of Police of the Town of Benton and then forwarded by the Chief of Police to the Town of Benton.
In response to your question, the statutory authority for the receipt of such funds by the municipality, follow the provisions of LSA-R.S. 13:1894.1, which states, in pertinent part:
 . . . however, in the event a violation of R.S. 14:98 is charged and such violation occurred within the territorial limits of a municipality not having a city court, all said fines, forfeitures, and penalties collected by the district court wherein said prosecution is actually brought shall be distributed and disbursed by said court to the governing authority of the municipality within whose boundaries said violation occurred . . . . (Emphasis added)
It is also our understanding, from the information provided, that the Town of Benton has a mayor's court and not a city, parish or municipal court. LSA-R.S. 13:1894.1(B), provides, in pertinent part:
 B. . . . However, mayors' courts shall have no jurisdiction whatsoever over violations as provided for by R.S. 14:98, nor to the trial of offenses against municipal ordinances relative to prosecutions or charges of driving while intoxicated.
Since the Town of Benton has a mayor's court, the provisions of LSA-R.S. 13:1894.1(C)(1) apply. From the language of the statute, it appears clear that the district court is to distribute and disburse the funds to the governing authority of the municipality. The governing authority in this case is the Town of Benton.
It is the opinion of this office that all funds or fines collected under these provisions should be paid directly to the Town of Benton. Since the Town of Benton has its own mailing address, it is the opinion of this office that all fines should be mailed directly to the Town of Benton at its' mailing address, and not to a Post Office Box set up by the Chief of Police.
I trust this sufficiently addresses your concerns. If our office may be of further assistance, please do not hesitate to contact the undersigned.
Yours very truly,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 By: __________________________ CHARLES H. BRAUD, JR. Assistant Attorney General
RPI:CHB:glb
OPINION NO. 79-185
February 16, 1979
15 ... Courts 71 ... Municipalities 50 ... Highway — Roads
Mayor's Court only has jurisdiction over violations of municipal ordinances. Municipal Council may adopt traffic ordinance on speed limit for state highway in municipality provided ordinance, is not contrary to state speed limit.
R.S. 33:441 33:41
Honorable Lloyd Benjamin Major of the Village of Natchez General Delivery Natchez, Louisiana
Dear Mayor Benjamin:
In your letter of February 15, 1979, addressed to Attorney General William J. Guste, Jr., you requested an opinion as to whether the Mayor's Court for the Village of Natchez has jurisdiction to try traffic violations where the provisions of Title 32 of the Louisiana Revised Statutes are alleged to have been violated.
We find that the Village of Natchez is incorporated under the Lawrason Act, R.S. 33:321 et seq. Hence, R.S. 33:441 is applicable. That statute limits the jurisdiction of the Mayor's Court to violations of municipal ordinances so that the mayor is not authorized to hear a case involving the violation of state law. However, R.S. 32:41 allows a municipality to adopt traffic ordinances which are not inconsistent with Title 32 or state regulations. Therefore, the Village of Natchez could adopt an ordinance providing for a 50 MPH speed limit in the corporate limits and offenders could be issued citations for violation of the municipal ordinance which would be within the jurisdiction of the Mayor's Court.
Sincerely,
WILLIAM J. GUSTE, JR.
 By: __________________________ KENNETH C. DEJEAN Assistant Attorney General
WJG, Jr/KCD:vw
cc: Mr. Michael J. Bonnette Attorney for the Village of Natchez